Good morning, and may it please the Court, James Crawford on behalf of Mr. Cook. Your Honors, I believe after going through the briefs, essentially the evidentiary and jury instruction issues which were raised I think have been adequately briefed within the brief. The one matter I think that needs to be addressed to the Court now is the sentencing issue, if we were to go back to that issue. And under Ameline 3, as the Court is probably well aware, the appropriate procedure would be a limited remand. Mr. Cook received, originally when he was sentenced on April 30th of 2004, he received 5 months in a community correctional facility and 5 months home confinement. I don't know, I mean it's my position, I don't know how Mr. Cook would actually benefit. I don't know if it would reduce his... Well, yes, when we don't know, we ask him or his counsel, does he want a remand, under Booker remand, he could get a higher sentence. Exactly. And that's the concern that I have on his behalf, is I believe at this point in time a limited remand would not be in my client's best interest. Has he approved of that yet, or have you had a chance to confer with him? I have not had a chance to approve, get his actual consent on that. But it would be my position as an advocate... You do not currently have a position on the question that Ameline says that you're supposed to have a position in, i.e., do you want a remand or don't you? Ameline indicates that it would be appropriate to send it back for the purpose of... What it indicates is that it's appropriate for the defendant to tell us whether he would want a remand. And the defendant is not telling us. The defendant is, I don't know if the Court has a record of the letters that it has received over the last year and a half. Well, most of them go up to Mr. Shaw in San Francisco. But he likes to communicate more with the Court than he does with myself. So, I mean, I'm in that position at this point in time to represent to the Court. I don't think it would be in his best interest for the limited remand. Your judgment as counsel is that you would not recommend a remand. I would not in my professional judgment. If I were in his shoes, I would not want it because he's already done his time. He's finished... Well, right now you're counsel and you're speaking for him, as I understand it, unless and until he withdraws counsel or he discharges you as counsel. Yes. So your representation is that you do not want a remand. That's correct. And I do not believe it would be in his best interest. Well, are you asking for a new trial in view of the... Well... Something else in here like the... With regard to the original issues, I still stand my ground that Federal Rule Criminal Procedure Rule 30 was violated because at the time the District Court had denied the request by trial counsel to, or the AUSA, to give a jury instruction under 18 U.S.C. Section 2 concerning aid or in a better liability. And at the time when defense counsel formed or formulated this closing argument, it was basically the theory of the defense that the prosecution was going after Mr. Cook as though he was the person that personally prepared and executed the forms in question which served as the grounds for the fraud against the administration. And in this particular case, as the defense was prepared to argue, there was not sufficient evidence to support the theory by the government. So after the defense had argued and they were discussing jury instructions, the AUSA again made a request for a jury instruction on aid or in a better liability and the District Court granted that request. And that allowed the government to essentially argue or have the jury find Mr. Cook guilty, not as the principal, not as the person that actually personally executed the forms, but maybe his wife did it, maybe his son did it, maybe his uncle did it. One of the things that I didn't understand about this, I mean, my quick reaction was that if the aiding and bidding crime really was different than the substantive crime, I mean, at least in a difference as to whether you had to sign it yourself or not, then there might be a problem here. But it isn't clear to me that the substantive case, I don't know how it became kind of accepted in this litigation that if he didn't sign it, he wasn't guilty of, directly guilty of the crime as opposed to fraying and abetting. I mean, where does this crime say you have to sign the piece of paper? Well, I think it basically indicates it's a general intent crime and he would have to be the perpetrator or the one that signed the document for him to be guilty. Well, it doesn't say that. It says you have to knowingly and willfully conceal or cover up a material fact or make a false or fraudulent statement in connection with the application for it. So it doesn't mean that you have to even sign the application. The application is on his behalf and he knows what's in it. Why does it matter if he signed it? That's what I'm asking you. Well, I guess he would have to, in order to be guilty of that crime as a principal, they have to separate liability as a principal. Does he have to sign it? Does he have to sign the application? I would submit that he would have to sign the document and put it in the mail and send it off to the government in order for him to receive the benefits. On the other hand, if he was aiding, abetting, assisting or encouraging the act and somebody else were to sign it on his behalf, then he was not acting as a principal at that point, but he was acting as an aider and abetter. But it's a complete series of different series or different type of acts or conduct that are underlying that. And I believe that's where the defense is prejudiced. The defense attorney basically got up and told the jury, ladies and gentlemen, my client did not sign the document. He's not guilty. They didn't prove it. Okay. Well, then the court turns around and says, well, he didn't have to prove it. Somebody else could have signed it and you can find him guilty anyway as an aider and abetter rather than as a principal. And I believe based upon that, it was prejudicial for the court not to advise the defense counsel in advance that it was going to give a jury instruction on an aider and abetter liability. He did advise him that he might give the jury instruction. Is that right? Might. But I think the defense attorney should have been under Rule 30 put on notice of what instructions were going to be given in order for him to knowingly and intelligently and adequately formulate a closing argument to the jury. And did defense counsel request permission to reopen closing argument once it was discovered that this instruction was going to be given? I don't recall if he made that actual request or not. I know he made the new trial motion and he was airing his complaints and essentially that motion that he was denied the opportunity under Rule 30 to reopen. And that was his argument in support of the new trial motion, based on my recollection. From a practical standpoint, if your client decides he doesn't want to remand on the question of sentencing, would he still want a reversal for an air to have a new trial? Because that's what you would get, of course, if you win this instruction. Oh, certainly. So he would want a new trial and take the chance on a different sentence. Your Honor, based upon the letters that were sent to the Ninth Circuit, I'm confident that Mr. Cook would be very happy to be advised that he would be awarded a new trial because that's essentially what his letters have been asking for from the beginning. So I am comfortable in representing to the Court that Mr. Cook would strongly desire to have a new trial if he were to prevail on the Rule 30 argument. However, with regard to the new sentencing argument, I just don't believe it's in his best interest because he's already completed the time. And if the Court were not to reverse on the Rule 30 ground or the other grounds articulated in the brief, then I don't believe it would be in his best interest under Ameline 3 to proceed. And unless the Court has any questions, I would be prepared to submit. Thank you very much. Thank you, Your Honor. May it please the Court. Andrea Russi for the United States. The government concedes that the District Court committed Rule 30 error in this case by failing to resolve the jury instructions prior to closing argument. However, defendant was not unfairly prejudiced in arguing his defense to the jury nor was he substantially misled in formulating his argument. His defense in this case was that someone else filled out the forms. He cross-examined the case agent and said, was it possible these forms were signed by someone else? And the case agent said, it is possible. And in closing argument, that is what defense counsel argued, that the thrust of his The fact that the aiding and abetting instruction was not resolved prior to closing did not prejudice him because it didn't repudiate or contradict his argument. You admit it was error for the Court not to do that? Correct. The Court should have resolved the jury instructions before argument. But I think in this case, defendant cannot demonstrate he was prejudiced by this. It's hard to understand that. I mean, if his argument is his defense was his wife filled it out, and then the government says, okay, fine, then he's an aider and abetter, so he loses anyway. Why isn't that inconsistent with his defense? Because I think, as the Court pointed out, defendant in either case can be liable as a principal. It doesn't matter whether he filled out the forms or his wife filled out the forms. So I think it didn't contradict his defense. While obviously it would have been better for defense counsel to have known the aiding and abetting instruction was going to be given for sure, I don't think that his defense would have been different. And we know that because he never asked for the opportunity to reopen his argument. And at the motion for new trial he objected to the aiding and abetting argument that the government made, and his objection was sustained during the closing argument. That's correct. He was taking the consistent position that this could not go to the jury on an aiding and abetting theory, and then it did. Well, after... Telling that, he has some reason to think it made a difference. Well, after closing arguments, the Court actually held a further conference on the jury instructions, and at that point defense counsel did not ask to reopen his argument and did not state that he would have given a different closing argument. At the motion for new trial stage, he said, at most, I probably would have argued differently. When he said in his final argument that, well, he didn't sign this, maybe his wife did, what was the response of the government when it argued closing? In closing argument, the government... Right, and that was cut off. That was cut off. And the government did not directly address that other than to say to the jury, use your common sense, who's the person who's receiving the benefits? And the government also made a statement to the effect that if defendants... defendant had not introduced any evidence that his wife had filled out the forms, and that was also objected to by defense counsel, then the government didn't pursue that any further. So the government's main thrust of its argument in closing was that, you know, the jury should use their common sense. Defendant was the one who received these benefits. Defendant, they were made out to defendant. They were signed in defendant's name. Therefore, the jury should conclude that defendant was... I'm picking up on Judge Berzahn's earlier comment. It's an unusual aiding and abetting theory because you're not aiding and abetting somebody else who's committing a crime in that other person's name. If I tell somebody to sign a check for me, I've signed it. And it's my check. And I don't think I'm aiding and abetting somebody to forge my name if I tell them to do it. It's a strange kind of aiding and abetting situation. Well, that's true because I think in either case, the defendant is liable as the principal. So it's different than a typical aiding and abetting. But liable as a principal doesn't really answer it because that's true of aiding and abetting generally. Right. Even if, I mean, if you aid somebody in pursuing a totally independent crime that that other person wants to commit. So the aiding and abetting presumably would have opened up the possibility of a scenario like this. It was really the wife who had cooked up the scheme to do this and he aided and abetted her only in, for example, giving her the information of giving her his information, his number so that she could fill out the form. So he assisted her, but the money, the whole scheme was really hers. It's a somewhat different scenario. So it seems like it could have opened up areas of defense had it been known that this was the issue. That's the problem. And while that is true, I think that this case does not, defendant was still not prejudiced in this case because unlike the cases cited in defendants' briefs such as Gaskin's, the fact that the aiding and abetting instruction was given did not contradict or eliminate his defense. While it could have maybe changed it in a small way, his defense still would have been somebody else signed the form. But your real position is that someone else signed the form wasn't a defense to the first and isn't a defense to the second either. It isn't that it didn't make it worse, it just didn't make it better and it was no good to begin with. That's really what you're saying. Well, I mean, the government's theory was that it didn't matter who signed the forms. Well, was the thrust of his defense that I didn't sign the forms and I didn't know anything about them? No. His defense was, I mean, he never came out and said that, but it was the jury needs to, it was basically that the jury had to consider whether or not the government had actually proved it was his signature and much of the defense closing was focused on the fact that the signatures on various documents looked different. He didn't testify. He did not testify. Did he have any witnesses at all? He did not. Well, essentially the gist of the case is that instead of his aiding and abetting the wife, it's sort of the wife aiding and abetting him in order to get his benefits, right? Correct. But that wasn't argued, I guess, from what you say. He couldn't argue aiding and abetting at all. He did not specifically argue aiding and abetting. And did the prosecution argue that? You said you were precluded from it. Yes. The prosecution attempted to discuss aiding and abetting. Defense counsel objected. And the prosecution requested to approach and have a sidebar, and the court denied that. So the prosecution was never able to argue aiding and abetting either. It really wasn't argued by either side, to speak of. That's correct. But the instruction was given. His defense was the government has to answer to your satisfaction beyond a reasonable doubt. Who filled out those forms and who signed them? And then the aiding and abetting at least seemed to expand the possibility that that wasn't true. Well, your position would be it isn't true anyway. It still doesn't matter who filled them out and who signed them. But it could matter as an evidentiary matter, right? If he didn't fill them out and he didn't sign them, he certainly has a stronger argument that he didn't, knowing and willfully falsify, conceal, and cover up anything than if he did fill them out and sign them. That's true. If he presented a defense that he had absolutely no knowledge or never received the forms or something to that effect, it would make a difference, although I don't think that defense was possible based on the evidence that was before the jury. If the Court has no further questions, I will submit. Thank you. Thank you very much. The government indicates that it would have been better for the defense counsel to have anticipated or have known that the instruction would have been given. The district court had already indicated that such an instruction was not going to be given. I don't believe it would be appropriate. When defense counsel was formulating his closing argument, basically trying to surmise the evidence, trying to paraphrase everything that occurred during the trial, and the weaknesses in the government's approach, to anticipate that the district court would subsequently give another instruction, basically presenting another theory, opening doors that had never been addressed. And I believe that's where the defense was prejudiced. In this particular case, the statute, 18 U.S.C. section 1920, has a knowing and willful element that the defendant made of knowingly and willfully made a false or fictitious statement. Nobody else could have profited from this except your client. Right? He was the one that was receiving the benefits. That's correct. Right. That's pretty logical. Explain to me why, exactly why was there a difference? If his defense was, if he essentially, the key question is whether he fell down and he signed it. But why was that the key question on any theory? It was the defense theory of the cases the defense attorney was arguing throughout the entire case to the jury, telling the jury that because there's variations in the signature, the prosecution or the government could not prove beyond a reasonable doubt that Mr. Cook personally executed the documents in question. I understand that. But why was that ever a viable theory, aiding and abetting or no aiding and abetting? Being a principal and actually executing the documents versus being an aider and abetter are two different, involve different acts and different mindsets. But only if you assume that the crime, as stated, requires that you be the person to fill out the document. It may not necessarily require that you be the person to fill out the document. If you're going under, as the principal, I believe it would require that you be the person to fill out the document. That's the question, not the answer. I'm trying to find out why it is that to be the principal you have to have filled out the document. Because when you're dealing with distinguishing the type of liability versus a principal versus an aider and abetter, I, okay. But I believe, based upon that, I believe the statute would require that the defendant personally execute the document to be guilty of the statute as a principal. On the other hand, if guilt is to be found as an aider and abetter, if he aided, abetted, assisted, encouraged commission of the crime, there's two types of liability that would formulate there. But they're based upon different types of acts, different types of conduct, and different types of mindset by the accused. And in this particular case, the government did not, or the court, excuse me, did not indicate it was going to allow the jury to find potential liability based upon an aider and abetter theory rather than a principal theory. And based on that, unless the Court has any other questions, I'll submit. Thank you very much. Thank you.
judges: Canby,siler , Berzon.